# EXHIBIT E

On March 6, 2024, I asked Cpl. Richerson and Deputy Kiel to come to my office to discuss matters concerning a recent post Deputy Kiel posted on his Facebook page. The post was titled "The 19th Amendment should be repealed", with a video supporting that idea. The meeting was intended to discuss how perceptions could be made by his co-workers within the Investigation Unit, other Sheriff's Office personnel, and the public. This was the second post that had been brought to my attention. The first was a direct quote from the Bible and in my opinion, it was just a quote. However, the most recent post had no obvious tie to religion, and I believed it could be considered offensive to females. The 19th Amendment deals with the right for women to vote and to repeal such Amendment could be considered offensive.

I began by asking "What he thought the post would accomplish". Deputy Kiel's response was those are his personal and religious beliefs and represent his way of life. I then asked how Deputy Kiel felt about what other people would think about his statement "The 19th Amendment should be repealed" and the video. Deputy Kiel's replied "he did not care what they thought" it was his personal belief, and he did not have to justify it to anyone. I asked Deputy Kiel how he thought his co-workers would perceive the post. Deputy Kiel responded again "I don't care what they think, it's a private post of my personal opinion". We then discussed the post not being private since other people (not friends on Facebook) had seen the statement and video. I again asked him about what he thought females within the Criminal Investigation Unit would think or perceive about the statement and video. His response was consistent as before "he did not care about their thoughts or feelings, and it was his First Amendment Right to free speech'. We discussed how his First Amendment Rights could be perceived to disregard others 19th Amendment rights. Once again Deputy Kiel was consistent in stating he did not care what they thought or how it was perceived by others. He went on to say he was a Christian first and a Deputy second. I acknowledged that was his right to believe as he did but cautioned that his delivery method without backing in a religious nature could be perceived in an unfavorable light. Deputy Kiel continued to disregard how others could find his statement offensive, and if they had questions, they could ask him. I advised Deputy Kiel that the people that could be offend by his statement probably perceived him as a "bible thumping asshole" and would never ask him to explain his beliefs. * It should be noted that by this point it was an intense discussion and there were times where voices were raised*

I continued the discussion by explaining to Deputy Kiel that if he did not care how others felt or how perception was sometime considered reality, how could he expect to be put into a leader role within the Sheriff's Office? Deputy Kiel advised that he was who he was, and he was not going to change. I asked Deputy Kiel if he was a supervisor how he would deal with this situation. He advised he wouldn't do anything because it did not deserve to be discussed. I advised that with that type of thought process he would probably never be more than he was within the Sheriff's Office. I asked since I was his supervisor and he was a direct reflection of me, how could I defend his beliefs over others' beliefs. He advised I should not even have to be having this discussion because others should come to him if they wanted to understand what he meant by his statement and the video. I told Deputy Kiel that most people were not willing to talk with someone who appeared to have a "I'm never wrong" attitude. Deputy Kiel advised that was not the type of attitude he had. I in turn again tried to explain that his post could be considered offensive to females, and others. However he continued to make it very clear that if they were offended, that was their fault, and it was his right to express his beliefs. I asked Deputy Kiel, what if the Sheriff's Office (as a whole) perceived he did

not believe that women should have a right to vote, which is the basics of the 19th Amendment. He advised that wasn't what he was saying, but if they had a problem with it, they should ask him for clarity.

      It was clear by this point that no matter what I asked or how I attempted to get Deputy Kiel to understand that others could take his statement and the video as offensive, that he did not care. He posted the statement "The 19th Amendment should be repealed" and the video, and if someone was offended that was on them not him. At this time, I ended our discussion and asked Deputy Kiel to exit my office. Cpl. Richerson remained in my office, and I immediately contacted Alaina Elliot the Sheriff's Office's Human Resource Director for guidance in the matter.

*Sgt. Michael Walker*

On March 7, 2024, I decided to have Cpl. Richerson and Deputy Kiel once again come to my office for a discussion. There were three main topics I intended to discuss. (1) How the conversation from the day before about the social media post and video was considered over. I also stated I had no further thoughts to be given and asked if they had anything, which both agreed no more to be added. (2) How I thought the lines of supervision may have been blurred by me being too open with them and to expect possible changes. They both advised they understood with little to no discussion. (3) Within the past year and past couple of days in mind how could I be a better leader. Cpl. Richerson and Deputy Kiel were encouraged for responses with no worry of repercussions if any fault they believed I had made. Cpl. Richerson responded that he had no issues whatsoever with my leadership styles, or how I handled myself as his supervisor. Deputy Kiel in turn stated, "he would not change anything" and "he loved working for me". I then asked if they had anything further, they would like to discuss and they did not. At this time the meeting was over and we carried on with normal business.

Sgt. Michael Walker

On 03/06/2024, I accompanied Sgt. Waker in his office, during a closed door meeting with Deputy Anthony Kiel, regarding discontent in the Sheriff's Office in reference to a Facebook Post made by Deputy Kiel. Deputy Kiel shared a video from Facebook, with the caption, "The 19th Amendment should be repealed".

During the meeting, Sgt. Walker asked Deputy Kiel about the post, and "what did it accomplish", by making the post. Deputy Kiel stated that it was his right to make the post, and the post aligned with his theological beliefs. Deputy Kiel stated that the 19th amendment aids in tearing apart the nuclear family. Deputy Keil stated that he did not say that Women shouldn't have the right to vote, but that his opinion was biblical and that he thought the Amendment should be repealed. Sgt. Walker told him that nowhere in his post did it reference being biblical, or that his basis for the post was biblical. The perception was that women shouldn't have the right to vote. Deputy Kiel stated that if someone wanted to know what the post meant, then they could come to him in person and ask him. He also said that the person being offended was not privy to the post, and that they had to go out and search for it. Sgt. Walker explained that people are not going to approach him to question him about the post, because his post makes his seem as though he is an asshole and that he does not support women's rights. Sgt Walker attempted to explain that people are going to take what he says at face value, and only form their opinions based off of this information. He further explained that Deputy Kiel is a representative of him as his supervisor and his unit, the Criminal Investigations Division. Sgt. Walker asked Deputy Kiel if he thought that he had done anything wrong, to which Deputy Keil stated that he was a Christian first, and a Deputy second and that he would not apologize for that.

Sgt. Walker explained that he knew that and that he was not asking him to change that, and that he was not telling him that he can't post what he wants, however he should be mindful of what people think of him due to the position that he holds. Deputy Kiel told Sgt. Walker that he didn't care what people thought of him because of his religious posts, Kiel stated that if his post was pro-abortion or some other opposing view, opposite to the way he believes and more inline with world views, that this would not be an issue and that he would more than likely be praised. Deputy Kiel and Sgt Walker continued to disagree on the way that Deputy Kiel was handling the situation, and that Deputy Kiel has an " I'm never wrong" attitude. At this time the content of the meeting began to intensify and voices were raised, as Deputy Kiel was not being acceptive of Sgt. Walker's observation on the matter. Sgt. Walker explained to Deputy Kiel that he will never be more than he is now at the Sheriff's Office, if he does not become more open minded, because he did not think he would be allowed to hold a leadership position based off of his current attitude regarding the matter, and how it affects other employees.  Sgt. Walker stated that he shouldn't have to be defending Deputy Kiel's social media or other personal expressions to the Sheriff's Office on a regular basis. Deputy Kiel and Sgt. Walker continued to disagree, and Sgt. Walker told Deputy Kiel if he wants to be a preacher, go be a preacher, but that his attitude here regarding anyone questioning his posts or speech, that he comes off and is perceived as a" bible thumping asshole" by other employees. Deputy Kiel remained firm that he did not think that he has done anything wrong, and that he knows that Sgt. Walker is pressured by his Lieutenant to handle this issue.

Sgt. Walker then asked for my input on the situation to where I stated " it is free speech, that you can say what you wish, but that doesn't mean that you won't have indirect consequences of the post". I also stated that he didn't have to be sorry for making a post, but could be sorry of how it

affects Sgt. Walker as his supervisor and how it could shine a negative light on the unit, despite being done on a private page. At this time, Sgt. Walker told Deputy Kiel that he was dismissed from the meeting.

*[signature]*
Corporal Nicholas Richerson

On 03/07/2024, Sgt. Walker asked that I, along with Deputy Kiel, meet with him in his office. We arrived at Sgt. Walker's Office, around 12:45PM, and Sgt. Walker began the meeting. He began by explaining to Deputy Kiel that as far as he was concerned that the discussion over the Facebook post and the fallout from it was over between the two. He stated that he would no longer discuss the issue. Sgt. Walker then posed the question, of what could he as a supervisor do to be better, or what could he change to make his unit better. I gave Sgt. Walker my response that I could not think of anything that I would change in the way he supervises, and that I was satisfied with the caliber of supervision I was receiving. We talked about Sgt. Walker's supervision style, how when you make your subordinates happy, then they will want to work without having to be micromanaged.

Sgt. Walker then asked Deputy Kiel what he would change that he had a free pass to critique any part of his supervision. Deputy Keil stated that he would not change anything and that he loved working for Sgt. Walker. He also stated that if he knew that things were going to change and that if he could not continue to work for Sgt. Walker the same as before, that he would rather go back to patrol. Deputy Kiel stated that he would not want the atmosphere in which he currently works to change. This meeting was brief, and this concluded the majority of the content of the meeting.

Corporal Nicholas Richerson

| | |
|---|---|
| **From:** | Anthony Kiel |
| **To:** | Alainna B. Elliott |
| **Subject:** | Re: Meeting or call request |
| **Date:** | Wednesday, March 6, 2024 7:26:39 PM |

We can either meet in person or talk over the phone. Either one is fine.

This concerns two Facebook posts that I made on my personal account during personal time.

One was several months ago and was a quote from the Bible. I was talked to about that post and also received a penalty on my annual evaluation because of it.

The second one is from a couple of days ago regarding a video on the 19th amendment. I shared the post in agreement with the video that was attached. It's a topic that I have theological convictions about, and it was shared during personal time. Today, my supervisor spoke to me at length about it, called me a "Bible-thumping asshole", yelled at me, and told me to "go be a f***ing preacher if you want to be a f***ing preacher". I was also informed that I will likely have to meet with the lieutenant about the post, although I was told today that I didn't violate any policy. I'm sure the meeting, if it happens, will be a repeat of today where I am required to defend my religious convictions.

I'm starting to feel like I'm being targeted because of my speech and would like some clarification on the issue.

**Investigator Anthony Kiel**
Baldwin County Sheriff's Office
Criminal Investigations Division
Office Phone: (251) 972-8589
anthony.kiel@baldwincountyal.gov

---

**From:** Alainna B. Elliott <ABELLIOTT@baldwincountyal.gov>
**Sent:** Wednesday, March 6, 2024 6:39:32 PM
**To:** Anthony Kiel <Anthony.Kiel@baldwincountyal.gov>
**Subject:** Re: Meeting or call request

Yes sir

I have meetings in Robertsdale tomorrow. Do you want to meet in person? If so I'm back In Bay Minette Friday.

Can you tell me what's it regards to?
Thanks
Alainna

> On Mar 6, 2024, at 4:20 PM, Anthony Kiel <Anthony.Kiel@baldwincountyal.gov> wrote:

Hey, could I set up a time to speak with you about a situation that occurred at work?

**Investigator Anthony Kiel**
Baldwin County Sheriff's Office
Criminal Investigations Division
Office Phone: (251) 972-8589
anthony.kiel@baldwincountyal.gov

On 03/05/24 around 0930 am, it was brought to my attention that Investigator Anthony Kiel had posted on his personal Facebook account that the 19th Amendment should be repealed. It should be noted that March is National Women's Month, and the 5th was a voting day for our county. The post had an attached video clip from a podcast where the two male hosts and a female guest were making the argument that women and Black Democrat voters were the reason for the current state of our country and that women indeed should not have the right to vote based on this ideology.

I was first shown the post by Deputy Sydney Wentworth of the Narcotics Division, and she was visibly upset and set back by what she believed to be sexist and misogynistic comments made by Inv. Kiel on his post. I then spoke with Cheryl Vaughn, the CID administrative assistant, and she too voiced her opinions on Inv. Kiel being both insensitive to the gay community and obviously to "women in general". She also said that comments of this nature would also cause females within the agency to feel unsupported, untrusted, and devalued by Inv. Kiel.

Shortly after, I spoke with Inv. Kiel's supervisor, Sgt. Michael Walker. He too had just been made aware of the comments on Facebook by Inv. Kiel and was equally surprised by them. It should be noted that last June, during gay pride month, Inv. Kiel made a post on Facebook which was a scripture verse damning gays and the gay community finishing with "Though they know God's righteous decree that those who practice such things deserve to die". At the time this raised some unrest with Deputies within this agency but after being reviewed was deemed to not violate any agency policies at the time of occurrence. During this first instance Sgt. Walker had spoken directly with Inv. Kiel about tempering his posts and beliefs so as not to offend others.

In this new incident, Sgt. Walker spoke with Inv. Kiel about his statements supporting that women should not have the right to vote. Inv. Kiel was not open to the counseling or correction that Sgt. Walker was attempting at the time. This session was also witnessed by Cpl. Nick Richerson of the Northend Investigative Unit. Sgt Walker and Cpl. Richerson both felt that the remarks made on this occasion by Inv. Kiel was not only sexist but timed with intention based on it being National Women's Month and voting day.

As the day went on and the post was shared within the agency many more people came forward who took personal offense to the remarks made on Facebook by Inv. Kiel. I spoke with CSI Cassy Linville briefly and she told me that she was put off by his comments and they made her cringe. She also said she had become accustomed to hearing things of this nature from Inv. Kiel though, so it did not surprise her that he had made comments such as this. Cassy did expound by saying as a female who works in an all-female crime scene group, she did not trust, feel valued, or believe that Inv. Kiel had either her or her partner's backs based on his disrespectful comments.

I spoke next with CSI Keeley Bynum who said she was put off by the fact that someone at the agency looked down on her because of her gender or sex. She also said it would be hard to trust Inv. Kiel moving forward as he did not see her as an equal.

That evening, I spoke with Inv. Caitlin Mcswain on the phone, and she voiced her concerns, anger, and disbelief regarding Inv. Kiel's Facebook posts. The next morning, she emailed both Capt. Reid and I with the following email. "To whom it may concern,

The following statement was posted on Deputy Kiel's social media: "The 19th amendment should be repealed" attached to a video discussing women's voting rights.

    His statement alongside what the main points of the video were meant to construe, left me, a female, and fellow deputy, feeling as though he believes I and other women shouldn't be allowed to vote. If women are not allowed to vote, hold opinions, or be able to take actions that could affect the general population then per his argument, women shouldn't be working in law enforcement. In our line of work, we should never have to question if the person we are going out on a call with trusts us with their life. But statements like the one recently shared impact not only Deputy Kiel's fellow sisters in law enforcement, but they have the potential to impact any future cases he may bring against a female he charges/ arrests.

    By posting that on a forum in which he has numerous contacts who work side by side with him in law enforcement, I believe Deputy Kiel has made it clear he is not comfortable with women who hold positions such as the one I and many other women do and I would ask that anyone in his position be reviewed for conduct and how their personal opinions may weigh in on their professional effectiveness."

    I spoke with Inv. Faldoski, Inv. McSwain's partner in the Southend investigative unit. Kyle told me he was very upset by not only how Inv. Kiel spoke of women, but other social groups as well. He felt that this type of speech was detrimental to the command and the public trust that we as Law Enforcement Officers hold in the community. This way of thinking has no place in a job where impartiality is key and expected.

    On the morning of 03/07/24, I spoke with CSI Katie Mooney. Katie shared some very personal thoughts with me. Not only was she affected by the posts from the previous year, but she was affected this year as a woman as well. Katie said there was no real surprise from her regarding the most current posts on Facebook by Inv. Kiel. She was equally offended by his current post but knew that with his track record, it was a matter of time before he showed who he truly was once again. Katie voiced that as a female crime scene Investigator she had lost all trust for Kiel and knew that she could not depend on him to do right by her based on how he felt about women. She worried for the newer members of the agency and her unit and how this would affect them, as like her she never expected this type of behavior from a Deputy or Cop. "How can you be trusted to enforce the law when you look at women and the gay community as secondhand citizens who are below you?"

    Lastly, on the morning of 03/08/24, a formal complaint was turned in by Deputy Andrew Anderson regarding the most recent events. Deputy Anderson typed a very articulate and pointed complaint that chronicled the numerous homophobic and misogynistic posts that Inv. Kiel had posted overtime on his Facebook. Those items will be attached to this analysis of Kiel's Behavior.

    In synopsis, I have tried to keep my feelings about this incident and subject out of this review. I have only highlighted a handful of statements that were given directly to me but know I have left out countless more who were equally offended but wished to stay nameless. I am more than happy to grant them their anonymity. The resounding consensus has been that Inv. Kiel's comments on Facebook were not only offensive but shed a dim light on his feelings towards women as inferior in a profession that deems we be the light of justice.

    The Law Enforcement Code of Ethics states below:

BCS.000069.Kiel

==As a law enforcement officer, my fundamental duty is to serve the community;== ==to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality, and justice.==

==I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency.== I will maintain courageous calm in the face of danger, scorn or ridicule; ==develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department.== Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

==I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions.== With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

==I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service.== I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession… law enforcement.

It appears that Inv. Kiel has failed in some aspects of the Law Enforcement Code of Ethics by allowing his personal feelings and prejudices to color his outlook toward women as lesser citizens to men. This is in direct conflict with being a symbol of public trust and could possibly discredit this agency. Inv. Kiel also appears to have possibly violated **Policy 1021.4 subsections (b) and (c)**.

> (b). Speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to, the Office and tends to compromise or damage the mission, function, reputation or professionalism of the Office or its members. Examples may include:
>
> 1. ==Statements that indicate disregard for the law or the state or U.S. Constitutions.==
> 2. Expression that demonstrates support for criminal activity.
> 3. Participation in sexually explicit photographs or videos for compensation or distribution.
>
>     This applies to subsection (b) when he stated that the 19th Amendment should be repealed.

(c). Speech or expression that could reasonably be foreseen as having a negative impact on the credibility of the member as a witness. For example, posting to a website statements or expressions that glorify or endorse dishonesty, unlawful discrimination or illegal behavior.

There is also a possible violation in **Policy 316.5.3 Discrimination, Oppression, or Favoritism**

Unless required by law or policy, discriminating against, oppressing, or providing favoritism to any person because of actual or perceived characteristics such as race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, age, disability, economic status, cultural group, veteran status, marital status, and any other classification or status protected by law, or intentionally denying or impeding another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing the conduct is unlawful.

 

# Baldwin County Sheriff's Office
## Criminal Investigation Division

BCS.000071.Kiel

**TO:** Investigator Anthony Kiel

**FROM:** Lt. Andrew Ashton

**Date:** March 12, 2024

### Notice Of Pre-Disciplinary Hearing

Per our policy, this is your formal notification of a pre-disciplinary hearing. The hearing will allow you the opportunity to relay any information regarding the below allegations of policy violations. You should report for this hearing promptly. After the hearing, you will receive notice of disciplinary action, if any.

**Date of Hearing:** 3/15/2024

**Time of Hearing:** 1000 am

**Location:** BMSO

Alleged employee policy violation/ misconduct:

Policy 1021 (Speech, Expression and Social Networking) of the Baldwin County Sheriff's Office
Policy 313 (Discriminatory Harassment) of the Baldwin County Sheriff's Office

_____ BG8
Employee Signature

3-13-24   9:40 am
Date and Time

Anthony Kiel
Employee Printed Name

**Tony Nolfe**

**From:** Tony Nolfe
**Sent:** Thursday, March 14, 2024 3:14 PM
**To:** Anthony Kiel
**Cc:** Andrew B. Ashton
**Subject:** Amendment to Notice of Pre-Disciplinary Hearing

Inv. Kiel,

Please amend the section "Alleged employee violations/misconduct" to include the following SOPs:

316.5.8(e) - Disparaging remarks or conduct concerning duly constituted authority to the extent that such conduct disrupts the efficiency of this office or subverts the good order, efficiency, and discipline of this office or that would tend to discredit any of its members.
316.5.8(i) - Any act on- or off-duty that brings discredit to this office.
316.5.9(f) - Discourteous, disrespectful or discriminatory treatment of any member of the public or any member of this office or the County.
316.5.9(g) - Criminal, dishonest or disgraceful conduct, whether on- or off-duty, that adversely affects the member's relationship with this office.
316.5.9(l) - Any other on- or off-duty conduct which any member knows or reasonably should know is unbecoming a member of this office, is contrary to good order, efficiency or morale, or tends to reflect unfavorably upon this office or its members.
1021.4(b) - Speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to, the Office and tends to compromise or damage the mission, function, reputation or professionalism of the Office or its members.
1021.4(c) - Speech or expression that could reasonably be foreseen as having a negative impact on the credibility of the member as a witness. For example, posting to a website statements or expressions that glorify or endorse dishonesty, unlawful discrimination or illegal behavior.

Thank you,

Major Tony Nolfe
Assistant Chief Deputy
Baldwin County Sheriff's Office
251-937-0210 Ext. 7634