# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| ANTHONY KIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NUMBER: |
| v. ) | 1:24-cv-00314-TFM-M |
| ) | |
| SHERIFF ANTHONY LOWERY, ) | |
| In his official capacity as Sheriff ) | |
| of Baldwin County, ) | |
| ) | |
| Defendant. | |

## DECLARATION OF ALAINNA ELLIOTT PURSUANT TO 28 U.S.C. § 1746

1. My name is Alainna Elliott. I am over the age of nineteen and am competent to make this Declaration.

2. I am the Director of Human Resources for the Office of the Baldwin County Sheriff. I have held this position since June 2012. My duties include, but are not limited to, maintaining personnel files, including all documents associated with investigations, and assisting in drafting, interpreting, and implementing personnel policies.

3. The first complaint regarding the content of Anthony Kiel's Facebook posts was received on June 12, 2023. The investigation of the complaint was primarily handled by Kiel's supervisors, including Major Tony Nolfe, the Assistant Chief Deputy. Major Nolfe discussed the incident with him and decided that further formal disciplinary action

1

was not necessary. Major Nolfe warned Kiel that faltering personal relationships could lead to ineffective professional relationship and therefore potentially have an effect upon professional performance.

4. Kiel's immediate supervisor, Sgt. Walker, did Kiel's performance evaluation for the 2022-2023 year. Pursuant to the Sheriff's policies, the performance evaluations are supposed to be reviewed by supervisory staff before being discussed with the employee. The final evaluation is then reviewed by the Major. After reviewing this evaluation, Lt. Ashton directed Sgt. Walker that he needed to consider the June 2023 post and the issues it had caused with Kiel's coworkers and emphasize the importance of being able to separate personal beliefs from professional duties.

5. On March 5, 2024, a female deputy approached Lt. Andrew Ashton. As set out in Lt. Ashton's administrative analysis, she was visibly upset about a post that Kiel had made stating that the 19th Amendment should be repealed. Other staff approached Kiel's direct supervisor, Sgt. Walker, and other supervisory officers, about his posts. They quickly became a topic of considerable discussion and consternation among the staff. Deputy Andrew Anderson eventually filed a formal complaint in writing about Kiel's Facebook posts, attaching multiple examples of posts in which Kiel had, in Deputy Anderson's words, "demonstrated an explicit bias towards women and the LGBT community."

6. Kiel's supervisors first met with him on March 6 to discuss the issue. Shortly after this meeting, Kiel asked to meet with me, stating that he felt like he was

being "targeted." Around the same time, I was also made aware of the complaints that were pouring in about Kiel's posts.

7. Then-Chief Deputy (now Sheriff) Lowery and I met with Kiel on March 7. Chief Lowery tried to explain that Kiel's posts had harmed his relationships with his co-workers and could harm the public's perception of him and the Sheriff's office. But Kiel insisted that he had the absolute right to express his beliefs however he wanted. Kiel also explained at length that he did not believe that women should be in a position of authority and belonged primarily in the home. I finally asked him if he thought that I should even have my position. He said words to the effect of "Well, that's not what I'm saying," but continued to explain to me the undue stress and negative consequences placed on families when women work outside the home.

8. Lt. Ashton completed his investigation and administrative analysis on March 8. After reviewing that analysis, and considering Kiel's statements, it was determined by Kiel's supervisors that Kiel had not only violated multiple policies, but also that his relationships with his co-workers had been irreparably harmed. Multiple female deputies and staff members, as well as staff who identify as LGBTQ (whether publicly "out" or not) expressed that these posts were the last straw, and that they did not believe that they could continue to work with, much less for, Kiel. There was also a significant concern that Kiel's statements during the investigation showed that he was starting to have difficulty separating his personal beliefs from his professional duties. At the least, his various statements would likely cause a perception of bias that could discredit any future investigations in which he was specifically involved – possibly to the

point of requiring disclosure under *Giglio v. United States* – and hurt the public's trust in the Sheriff's Office in general.

9. Pursuant to the Sheriff's policies, Kiel was notified that his termination was being considered and that a pre-disciplinary hearing was scheduled for March 15. On March 19, he was notified that he would be terminated; he chose to resign in lieu of termination. If Kiel had been terminated, he would have had the opportunity to appeal the decision to the Sheriff, the Personnel Appeals Board, and ultimately the Circuit Court of Baldwin County.

10. I declare under penalty of perjury that the foregoing is true and correct. I further declare that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge. All opinions expressed herein are based on my perception, formed through my personal knowledge, observations, and experiences.

Executed on this the 8 day of December, 2025.

SIGNATURE  *Alainna Elliott*

PRINT NAME  Alainna Elliott